The final case on the calendar is Corren v. Kondos. Good morning, Your Honors. My name is John Franco. I'm from Burlington, Vermont. I'm representing the appellants in this case. This case involves three challenges to the provisions of the Vermont Campaign Finance Act as they relate to publicly financed candidates. The first, in which I'd like to make the main focus of my argument this morning, is the provision of the Vermont Campaign Finance Act, which allows no political party contributions to publicly financed candidates, while at the same time allowing unlimited political party contributions to traditionally financed candidates. Isn't this the deal the statute made? Well that's the deal the statute made, but the statute is internally inconsistent with the legislature's findings. The legislature's findings were that unlimited public, unlimited contributions to political parties were an anti-corruption measure, and they were necessary to counteract the effect of political action committees and the large individual donations that go to political action committees. And so for the overwhelming majority of political candidates in Vermont, you've got to understand there are only two offices that are potentially publicly financed. In all other cases, there's unlimited, there's unlimited political party financing permitted, and the legislature made a specific finding that it was necessary to counteract the corrupting effect of PACs. Why isn't that? Are you saying only two offices are eligible for public financing? Yes, the offices of Governor and Lieutenant Governor. So state senators, we have a plaintiff here who's a state senator? He was running for Lieutenant Governor. Ah. He is now the Lieutenant Governor of Vermont. I see. He was a candidate for Lieutenant Governor. How do you respond to the argument that it's basically the candidate's choice? The candidate can choose to operate with private funds, or the candidate can choose to operate under a public financing system. And if the candidate chooses to operate under the public financing system, the candidate essentially has to adhere to those rules. But it's the candidate's choice. Right. It's the candidate's choice. But that runs afoul of the unconstitutional condition doctrine, which is long held that you cannot condition the expenditure of the grant of public money on restrictions of First Amendment activities in order to obtain a result that you could not otherwise obtain. And that's the slippery slope here. Imagine if that were the case. You could have a public financing system that began to manipulate the political content of what the publicly financed candidate said by saying, for example, if you want financing, you can't campaign on certain issues like, say, climate change. You could have restrictions that say you can't use certain media, you can't advertise on CNN, or you can't advertise in the New York Times. These are just theoretical. These don't exist. Exactly. What's your argument? I'm trying to understand it. My argument is there can't simply be an argument that if you take the money, you have to live by whatever conditions we have. The argument is the conditions have to be constitutional conditions. That is the unconstitutional condition doctrine. It's in Perry v. Sinderman, Frost v. Frost Trucking. It goes back to the 20s. What would be the unconstitutional conditions since you voluntarily decide to abide by them or not? The unconstitutional condition is prohibiting a publicly financed candidate from having any coordinated campaign activity with a political party. In the case of Randall v. Sorrell, the U.S. Supreme Court said that's a very important associational interest. You're being told you've got to give that up. The other key case to understand here is Colorado II. Colorado II said it allowed, in that case Congress, to restrict political party contributions to candidates, coordinated contributions to candidates, but only for one reason, and one reason alone, to prohibit the funneling of large individual contributions from individuals through political parties into the political candidates. There was no evidence in this case of a funneling problem. The legislature in its findings with the 2014 amendments said the funneling problem existed with PACs, not with political parties. So there's no foundation for this restriction, which is a restriction on the rights of political association of publicly financed candidates. And again, our argument, it's no different than if the state tried to do these other things, like limit your message or limit your medium, or what about targeting audiences? You can't campaign to certain audiences because we want to skew voter turnout. I mean, there's all, if the rule was simply, if you take, it's sort of what I call the father of the teenager. If you live in my house, you've got to live under my rules. That can't be the rule in public financing because of the pernicious and insidious effects it would allow. What happened in this case, it quite literally created the impression, in the Dean Koren case, when he ran in 2014, that the two political parties that he was the nominee of, both the And Judge Sessions, the trial judge, made a finding that he was told by the Attorney General's office, point blank, as a publicly financed candidate, you have no, you shouldn't have even contacted or had any conversations with the Vermont Democratic Party. That runs directly afoul of what the Supreme Court said in the Randall case about the rights of association between candidates and their parties, between the party's donors and their expectation the party's... Let me just take you, though, to, you mentioned Colorado, too. Right. You've got RNC, too, right? That essentially can be understood to say that contributors can't complain if publicly financed candidates agree not to take their contributions. And you've got Colorado, too, which you mentioned, that says that we treat parties and supporters the same regarding their ability to make coordinated expenditures. So why doesn't that mean that parties can't complain if Vermont prohibits candidates from accepting, who accept public financing, from accepting contributions on related expenditures from parties? Because, again, the case law, right up through the most recent case of McCutcheon, says restrictions, campaign finance restrictions must relate to the prevention of corruption or its appearance. And in this case, there is no prevention of corruption in its appearance because the legislature has specifically found that political party support of candidates is a good thing, an anti-corruption measure, and not a bad thing. And I see my time's up. I'd like to reserve for two minutes. No, no, you still have a minute. Oh, okay. The other provisions of the challenge or the provision that affected now-Lieutenant Governor Zuckerman, then a state senator, and they disallow eligibility for campaign financing if one announces or engages in fundraising prior to February 15th. And normally that's not a problem, but what happened in the 2015-2016 election cycle is there was the governor announced he was not seeking re-election and the campaign season really started out in early 2015. And that restriction essentially is what I call the binding and gagging provision. It does not allow somebody thinking about public financing from even announcing his or her intention until February 15th. In this case, it was almost, would have been a year after the real campaigns, real campaigning started and the real fundraising started. And one of the things that Lieutenant Governor Zuckerman testified to is he said, I couldn't simply be on the campaign. The campaign was going on and I needed to get endorsements. What's the proper standard for evaluating the constitutionality of 2983? I think the standard is, generally speaking, it's okay, but in this case and under these circumstances, it unfairly and unnecessarily burdened the political opportunity of the publicly financed candidate. And we're only asking for an exception in those circumstances where the campaign has actually started before February 15th. And then it's just got to other interests have to yield to that. You can't expect the publicly financed candidate to have to sit on the sidelines bound and gagged and not being able to participate. And the last provision is the prohibition against any self-financing even after the candidate's qualified. And that goes back to Buckley, that that doesn't have anything to do with corruption or preventing the appearance of corruption. Thank you. Is there still a state proceeding pending? And what's the status of that? No. The state proceeding, I'm actually limited in what I can say about that. The state proceeding was resolved shortly before Thanksgiving without a judgment. Thank you. Good morning, Your Honors. In this case, what the plaintiffs seek is to receive all the benefits of public financing for their campaigns while accepting none of the restrictions that go along with that public money. And they argue that if there are any restrictions that come along with that public money that put them at a disadvantage compared to candidates who do not participate in public financing, then those restrictions must be a voluntary choice as to whether or not to accept public financing. What about the argument that your adversary makes, and it's in page 24 of the opening brief, where they bring up a hypothetical in which the state conditions the receipt of public funds on complying with various restrictions, for example, not discussing various issues. And as you heard in argument today, not talking about climate change or other issues. Would that situation be unconstitutional? I'd respond in two ways. First of all, the Vermont statute doesn't have any conditions of that sort whatsoever. Second of all, there are limits on what kind of conditions can be imposed along with public financing, and the test is whether or not they are All of the restrictions here are rationally related to the purposes of reducing the influence of private donors on candidates or on maintaining the uses of the state money for not to exhaust state funds by giving away enormous amounts of money by having some qualifying triggers. So all of the restrictions that are part of the Vermont statute meet that rational basis test, and they would even meet a higher test. But the examples of content-based restrictions are not going to meet that kind of test. And it's very important to recognize, as this Court has done in the Republican National Committee case following the test set forth in Buckley, that the way you determine whether or not there's any infringement of rights for a candidate who participates in public that coerces the candidate into participating. And you decide that by looking at the package of benefits that a candidate would receive by participating in public financing and see, is that so rich that everyone is going to want to do it? And indeed here, it is not so rich that everyone is going to do it because it has some restrictions. It's indeed those restrictions that the plaintiffs are complaining about, and they're saying it's not an coercive program in Vermont. So because there's no coercion, then you don't have any infringement of fundamental rights. So if you don't have infringement, you're at rational basis review. I'm having trouble understanding the rationale behind 29A3A's restrictions on the timing of announcements and fundraising. Could you explain a little bit more? Certainly. So the restriction on timing says that a candidate who wants to receive public financing can't announce until February 15th of the election year. And that starts the time period for the candidate to receive qualifying contributions. So the hurdle that the candidate has to go through to receive the hundreds of thousands of dollars of public money is during a roughly four-month period, which starts February 15th and ends with the beginning of June when the grant would be given, is during that limited time period, the candidate has to raise, for lieutenant governor, it's $17,500 from more than 750 donors in amounts of $50 or less. So you have this restricted time to show that you are a viable candidate. If a candidate could announce much earlier and extend that time, then that candidate wouldn't be meeting the test that the legislature has set forward. And having a test of that sort is the kind of hurdle that all campaign finance statutes put forward. They all want to make sure that a candidate is viable enough to really be . . . You can't say anything before that, right? You can't do anything before the February 15th. Well, you can't formal . . . you can't announce that you're a candidate and you . . . You ask people for money before that? You can receive up to . . . you can accept or expand more than . . . up to $2,000. So essentially, you can receive seed money. And this timing, you know, the question of whether February 15th is a good date, January 15th, December 15th, that's a valid legislative judgment. The legislature is familiar with how campaigns run, and that is just a fine-tuning that is allowed for the legislature to do in setting this parameter for this time period. What does 29.838 do that 29.814 doesn't do? Or maybe does 29.814 do all that's necessary? 29.814 defines the Vermont campaign financing qualification period as the period beginning February 15th of each even-numbered year and ending on the date on which the primary petitions must be filed. Doesn't that achieve the same result without limiting speech? Well, that definitional section in 29.814 defines the time period for the qualification period, but it doesn't say what the candidate can do during that period. But the thing is, if a candidate could say in December, I'm going to be running and I'm going to be looking for public financing and I want lots of people out there to start getting ready, it would be giving a jump start and extending that. It would, in practicality, be extending that qualification period. And to have it be the kind of test that the legislature thought was appropriate, which was to have a roughly four-month period for getting the word out and raising those qualifying funds, it was up to the legislature to specify that there would be this, that you wouldn't be able to actually announce until that date. I think that kind of detail, and in fact, Attorney Franco said this was an unusual year where candidates actually started campaigning earlier, and maybe this is something that over time the legislature can adjust, but it based that February 15th starting time on the practices in Vermont that were the trends of how candidates campaigned for lieutenant governor and governor. And there usually are very short time periods, since we have elections for both those offices every two years, people really don't start running for them until towards the end of the legislative session of the election year. And so February 15th is actually even earlier than that. So I'd like to reiterate that because this program is voluntary, rational basis review is the appropriate level of review. Each of the restrictions that are imposed here are supported by rational basis. The restriction on political party contributions is no different than the restriction on contributions by anybody else. All donors are treated the same way in being forbidden from giving contributions after the candidate accepts public financing, and that's a choice that the candidate can make, just as the candidate can make other choices on how to run a campaign. So accepting that restriction is part of those choices. The court below dismissed all of plaintiff's claims, and we ask that this court affirm the district court's dismissal of all those claims. If there are no more questions, I'll sit down. Thank you. Thank you, Your Honor. Just to revisit the Republican National Committee decision a bit, it didn't say that voluntariness alone is sufficient. It said that public financing met two objectives. Number one, it eliminated corruption in its appearance, and it provided relief from private financing. Prohibiting party support of a publicly financed candidate doesn't go to either one of those objectives. It goes to neither one of them because you don't have to receive private donations from a political party by definition. Are you talking about party support as opposed to ordinary people's support? Exactly. Exactly. And Colorado, too, did not hold. Nowhere did Colorado, too, hold that the Constitution permits limitations on the aggregate support of a party to a candidate. What it said, it was okay to limit it to prevent, again, the term it used was funneling of large contributions by large individual donations to individual candidates. And for that reason, and again because of the legislature's findings in this case that a political party support of candidates was an anti-corruption, anti-PAC effort, this restriction on publicly financed candidates is not rationally related. It runs contrary, though, to the legislature's findings, and I quoted them in the brief, but I wanted to specifically point out findings 11, 12, and 13 that accompanied the 2014 amendments to this act. It said it is appropriate to limit contributions from political committees without imposing the same limits on political parties. It talked about funneling being a problem with PACs, not with Vermont's political parties, which are said political parties are created by the representative process of delegates throughout the state of Vermont. It made a fundamentally different judgment about the role of political parties in candidates than Congress made that Colorado, too, was based on. This was a sea change in the thinking about financing in Vermont. But then to have these outliers out here to say, well, the two races where there are publicly financed that can be publicly financed, and I think historically there have been maybe four races that have actually been publicly financed, can be subject to this restriction and everybody else isn't, then that starts to run afoul about other things that have been talked about in the jurisprudence. Buckley talks about unfairly and unnecessarily burdening the political opportunity of a candidate. Well, this would do that. It's not closely drawn for purposes of preventing corruption. It restricts the political participation of some to enhance the relative participation of others. It restricts political participation of the candidates. Again, the- Finish your argument, please. Thank you. The result here has to match the statement of the purpose of the legislation, and it just completely doesn't do that. Thank you. Thank you. Thank you both for your arguments. The court will reserve decision. The clerk will adjourn court. Court is adjourned.